UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHILLIP LACEFIELD, | |
| Plaintiff, | |
| v. | Civil Action No. 1:05-CV-11581-RCL |
| LEASECOMM CORP., et al., | |
| Defendants. | |

**DEFENDANT CIT GROUP INC.'S MOTION TO STRIKE
PLAINTIFF'S AMENDED COMPLAINT**

Now comes the Defendant, CIT Group Inc. ("CIT"), and moves that this Court strike the Amended Complaint served on CIT by Plaintiff Phillip Lacefield ("Lacefield"). As reasons therefore, all of which are more fully explained in the Memorandum filed contemporaneously herewith, CIT states that the Amended Complaint should be stricken in its entirety because the case terminated upon the judgment of the Court of Appeals for the First Circuit, which affirmed the Court's judgment of dismissal, and Lacefield neither moved for relief from the Court's judgment pursuant to Fed. R. Civ. P. 60(b), nor obtained leave of court to file the Amended Complaint as required by Fed. R. Civ. P. 15(a).

In support of this motion, CIT relies upon the mandate issued by the United States Court of Appeals for the First Circuit on June 11, 2007, attached hereto as Exhibit A, and the Plaintiff's Amended Complaint, which was served on CIT on August 2, 2007 and which is attached hereto as Exhibit B.

For the reasons stated, CIT requests that the Court strike Plaintiff's Amended

Complaint.

<div style="margin-left: 40%;">

CIT GROUP INC.

By its attorneys,

/s/ Elizabeth A. Mulcahy
Ralph T. Lepore, III (BBO No. 294420)
ralph.lepore@hklaw.com
Elizabeth A. Mulcahy (BBO No. 663787)
elizabeth.mulcahy@hklaw.com
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, Massachusetts  02116
Telephone: (617) 523-2700

</div>

Dated:  August 17, 2007

## LOCAL RULE 7.1 CERTIFICATION

I, Elizabeth A. Mulcahy, hereby certify that I have been unable to confer with the Plaintiff regarding this Motion to Strike because he is in custody at the Federal Correctional Center in Forrest City, Arkansas.

/s/ Elizabeth A. Mulcahy

## CERTIFICATE OF SERVICE

I, Elizabeth A. Mulcahy, certify that I caused a copy of this document to be served on the Plaintiff by first class-mail and on counsel for all other parties electronically through the ECF system on August 17, 2007.

/s/ Elizabeth A. Mulcahy

# 4739902_v1

EXHIBIT A

# MANDATE

# United States Court of Appeals
## For the First Circuit

---

No. 06-1914

PHILLIP LACEFIELD,

Plaintiff, Appellant,

v.

LEASECOMM CORP., ET AL.,

Defendants, Appellees.

---

Before

Boudin, <u>Chief Judge</u>,
Lipez and Howard, <u>Circuit Judges</u>.

---

JUDGMENT

Entered: June 11, 2007

Appellant Phillip Lacefield appeals from the district court's dismissal of his complaint, filed primarily under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c). After carefully reviewing the record and the briefs of the parties, we agree that the complaint fails to state a claim upon which relief can be granted. <u>See</u> Fed. R. Civ. P. 12(b)(6).

First, appellant cannot demonstrate that the alleged RICO activity was the proximate cause of the injury about which he complains -- the criminal judgment and restitution order that entered against him in the federal district court in Western Tennessee. Rather, the <u>direct</u> cause of the judgment was the Tennessee district court's imposition of sentence, and this sentence, in turn, was the direct result of the jury's guilty verdict and appellant's guilty pleas. That the alleged predicate acts may have <u>contributed</u> to the judgment simply is not enough to show proximate causation. <u>See George Lussier Enterprises, Inc.</u> v. <u>Subaru of New England, Inc.</u>, 393 F.3d 36, 51-52 (1st Cir. 2004).

Second, and even assuming adequate allegations of causation, appellant cannot demonstrate that the appellees' supposed predicate acts constituted a pattern. Rather, from appellant's own description of his claims, it is plain that he has alleged, at most, "a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities." See Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir. 1990) (internal quotation marks and citation omitted; emphasis added). See also Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 19 (1st Cir. 2000) ("[o]ur own precedent firmly rejects RICO liability where the alleged racketeering acts, taken together, comprise a single effort to facilitate a single . . . endeavor") (internal punctuation and citations omitted; emphasis added).

Finally, appellant was not entitled to an opportunity to conduct discovery since he failed to specify any discoverable information that was in the exclusive control of the appellees and that could cure the defects in his complaint. See New England Data Services, Inc. v. Becher, 829 F.2d 286, 290-91 (1st Cir. 1987).

    Summarily affirmed. See Local Rule 27.0(c).

                            By the Court:

                            Richard Cushing Donovan, Clerk.

Certified and issued as Mandate
under Fed. R. App. P. 41.

Richard Cushing Donovan, Clerk                By: _____

_____                    Operations Manager.
Deputy Clerk

Date: )( 3(-)

        [cc: Phillip Lacefield, Richard J. McCarthy, Esq.,
           Paul Killeen, Esq., Tara J. Myslinski, Esq.,
              Francis J. Sally, Esq., John Miller, Esq.]

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

PHILLIP LACEFIELD,

      Plaintiff,

V.                                  CIVIL ACTION NO. 05-11581-RCL

LEASECOMM, ET AL.             Conspiracy to Violate
                                Racketeer Influenced and
      Defendants.             Corrupt Organizations,
                                R.I.C.O., 18 U.S.C. § 1962(d)

                                Civil R.I.C.O.,
                                18 U.S.C. § 1964(a) and
                                18 U.S.C. § 1964(c)

---

## AMENDED COMPLAINT

---

      Comes now the Plaintiff, PHILLIP LACEFIELD, Pro Se, and
amends his Complaint as follows and would state and show in
support the following:

### STATEMENT OF THE CASE

      The defendants conspired together to violate the Racketeer
Influenced and Corrupt Organizations (R.I.C.O.) Statutes,
18 U.S.C. §§ 1961 et seq., in violation of 18 U.S.C. § 1962(d),
Conspiracy to Violate R.I.C.O., have injured the Plaintiff in his
business and property as a proximate result of said violations,
and therefore are liable to the Plaintiff for damages under the
Civil R.I.C.O. Statutes, 18 U.S.C. §§ 1964(a) and 1964(c).

### JURISDICTION

1

1.    Jurisdiction and venue in this Honorable Court are
appropriate, and Jurisdiction of this Court is invoked pursuant to
        18 U.S.C. §§ 1961 et seq., R.I.C.O.;
        18 U.S.C. §§ 1962(c) and 1962(d), Conspiracy to Violate
        R.I.C.O.;
        18 U.S.C. §§ 1964(a) and 1964(c), Civil R.I.C.O. Statutes;
        etc.

### PARTIES

2.    The Plaintiff PHILLIP LACEFIELD is a resident and
citizen of Bartlett, Tennessee and the United States of America,
with an address of P.O. Box 3000, Forrest City, Arkansas 72336-3000.

3.    The Defendants remain residents and citizens of the
United States of America, and their addresses and other information
remains the same as previously reported in Plaintiff's Original
Complaint and in each Defendant's returned executed summons.

### FACTS

4.    From about March 2001 until the present (2007), the
defendants have conspired together to violate the R.I.C.O.
Statutes, 18 U.S.C. §§ 1961 et seq., with the Plaintiff being
the target of said conspiracy.  The R.I.C.O. activity of the
defendants has injured the Plaintiff, proximately due to said
R.I.C.O. conspiracy of the defendants.

5.    The predicate acts of R.I.C.O. that the defendants
conspired to violate are, inter alia, Criminal Infringement of a
Copyright (18 U.S.C. § 2319); Interference with Commerce, Robbery,
and Extortion (18 U.S.C. § 1951 et seq.); Racketeering
(18 U.S.C. § 1952 et seq.); and Bribery (18 U.S.C. § 201).

6.  This R.I.C.O. conspiracy of the Defendants has made itself manifest in the writings and publications of all of the Defendants, which directly concern the Plaintiff, published e.g. on Defendants' web site www.wreg.com, entitled, inter alia, "ANDY WISE--ON YOUR SIDE." All of the Defendants willfully and knowingly aided Defendant ANDY WISE in preparing the contents of said writings concerning the Plaintiff, which have been continuously published on said web site from 2001 until the present (2007). See e.g. Exhibit A and Exhibit D, Defendants' www.wreg.com web site web pages 327326, 555811, 871618, etc., attached hereto and incorporated herein, the same as if they were fully set out herein, as proof of the allegations infra. Other examples of the Defendants' R.I.C.O. activity, a manifestation of their R.I.C.O. conspiracy targeting the Plaintiff, are the written statements made by Defendants CIT GROUP, INC. and LEASECOMM CORPORATION to the U.S. District Court, Western District of Tennessee on or about October 29, 2003, which were read into that Court Record on October 29, 2003. Inter alia, said multiple statements, incorporated herein by reference the same as if they were fully set out herein, copied and infringed upon Plaintiff's Copyrighted Property, see attached Exhibit B--Plaintiff's published Copyright Notice, and therefore also automatically violated the Criminal Infringement of a Copyright Statute, 18 U.S.C. § 2319. See said statements of Defendants, incorporated by reference herein. See also 17 U.S.C. §§ 101 et seq., The Copyright Act of 1976. See also 18 U.S.C. § 1961, which names 18 U.S.C. § 2319, Criminal Infringement of a Copyright, as a predicate offense under Racketeer Influenced and Corrupt

3

Organizations (R.I.C.O.). <u>See</u> also 18 U.S.C. § 1962(d), § 2319.

     7. All of the Defendants have been associated and
affiliated with each other since 2001, when this R.I.C.O.
conspiracy was hatched by all of the Defendants, i.e. their
R.I.C.O. conspiracy to violate the R.I.C.O. Statues, 18 U.S.C.
§§ 1961 et seq., in violation of 18 U.S.C. §§ 1962(c) and 1962(d).
<u>All</u> of the Defendants 1) made an agreement with each other to
violate R.I.C.O., 2) possessed the <u>knowledge and intent</u> to join
the conspiracy, and 3) <u>participated</u> in the conspiracy. In
addition, 1) this conspiracy was <u>willfully</u> formed by these
defendants, and 2) the defendants <u>willfully</u> became members of
the conspiracy. This conspiracy, "hatched" by these defendants,
demonstrated 1) an object to be accomplished, 2) a plan or
<u>scheme</u> embodying the means to accomplish that object, and 3) an
<u>agreement or understanding</u> between the defendants whereby they
became definitely <u>committed to cooperate</u> for the accomplishment
of the object by the means embodied in said agreement, or by any
effectual means. The object to be accomplished by these
defendants was to interfere with the Plaintiff's commerce, to
rob the Plaintiff, to extort the Plaintiff, to infringe upon
Plaintiff's Copyrighted Property, to <u>criminally</u> infringe upon
Plaintiff's Copyrighted Property, to bribe others to do the same
to Plaintiff, and to commit Racketeering. Inter alia, these
defendants used the www.wreg.com web site and the statements made
to the Court supra to, inter alia, <u>use</u> and <u>publish</u> Plaintiff's
Copyrighted Property (<u>un</u>authorized by Plaintiff), to extort the
Plaintiff, to rob the Plaintiff, to bribe others to do the same
to Plaintiff, and to commit Racketeering. The plan or <u>scheme</u>

<div align="center">4</div>

of these defendants--which was <u>intended to injure</u> the Plaintiff--
embodied the means to accomplish their object, e.g., their use of
their www.wreg.com (wreg.com) web site and their statements to
the Court discussed supra.  These defendants had been previously
associated and affiliated with each other, e.g., defendants
CIT GROUP, INC. and LEASECOMM CORPORATION in the equipment
leasing business and defendants ANDY WISE, WREG-TV, INC.,
THE NEW YORK TIMES COMPANY, and WORLDNOW in the "information"
broadcasing and publishing business.  These entities had already
made many other previous agreements and come to many other
understandings between themselves.  Therefore, it was <u>not</u>
difficult for all of the defendants to become definitely <u>committed</u>
<u>to cooperate</u> with each other for the accomplishment of this plan
and <u>scheme</u> by coming to <u>an understanding</u> with each other and by
executing <u>an agreement</u> between each other to do so.  <u>See</u> supra.

    8.  These defendants all <u>knowingly</u> and <u>willfully</u> joined
this R.I.C.O. conspiracy to participate in the conduct of the
affairs of the R.I.C.O. enterprise, which was affecting interstate
commerce.  These defendants participated in the conduct of the
affairs of the R.I.C.O. enterprise and did so through a pattern of
racketeering activity by agreeing to commit, or in fact
committing, <u>two or more predicate offenses</u> of R.I.C.O.
<u>See</u> ¶¶ 5, 7 supra.  <u>See</u> e.g. <u>Exhibit A</u> for <u>multiple</u> <u>predicate offenses</u>.

    9.  Defendants also had regular access to their television
broadcasting station, WREG-TV Channel 3 in Memphis, Tennessee,
whereby they verbally and otherwise broadcasted information
concerning the Plaintiff, also in violation of 18 U.S.C. § 2319,

                                  5

Criminal Infringement of a Copyright (Plaintiff's Copyrighted
Property); Interference  with Commerce, Robbery, and Extortion,
in violation of 18 U.S.C. § 1951 et seq.; Bribery, in violation
of 18 U.S.C. § 201; and Racketeering, in violation of 18 U.S.C.
§ 1952 et seq., and all in violation of R.I.C.O. (Racketeer
Influenced and Corrupt Organizations),  18 U.S.C. 1961 et seq.
All of the defendants also conspired with each other to accomplish
their plan and scheme to injure the Plaintiff by employing this
effectual means as well as the other means discussed supra.

    10.  All of the defendants also conspired together to have
the information and criminally-infringing unauthorized use of
Plaintiff's Copyright Property cited supra to be continuously
broadcasted and published via, inter alia, the defendants'
www.wreg.com web site and web pages cited supra since on or about
March 2001 until the present (2007).  See e.g. Exhibit C, as
proof that said web pages were updated ("Last Modified") by the
defendants on "08/02/2004," "06/10/2004," and "03/05/2004"
respectively (as of 5/18/2007).  Defendant ANDY WISE even testified
to said continuous publications of said Criminal Infringement of a
Copyright material on the Defendants' web site www.wreg.com during
his January 3, 2002 sworn deposition.  See Defendant ANDY WISE's
January 3, 2002 sworn deposition transcript, incorporated herein by
reference the same as if it were fully set out herein, as proof set out
herein.  See also Exhibits A, C, and D, as proof set out herein,
for multiple and current (5/18/2007 and 7/13/2007 e.g.) unauthorized
usages of Plaintiff's Copyrighted Property by all Defendants.  See
also Exhibit B for proof set out herein of the terms concerning
said mulitiple unauthorized and infringing usages by all Defendants,

e.g.:

> <u>SELF-EXECUTING CONTRACT/SECURITY AGREEMENT</u> IN EVENT OF
> <u>UNAUTHORIZED USE</u>:  By this Copyright Notice, both the
> juristic person and any agent of said juristic person,
> hereinafter <u>jointly and severally</u> "User," <u>consent</u> and
> agree that any use of any of PHILLIP ANTHONY LACEFIELD(c),
> other than authorized use as set forth above, constitutes,
> inter alia, <u>un</u>authorized use, i.e., counterfeiting, of
> Secured Party's common-law Copyrighted property,
> contractually binds User, renders this Copyright Notice a
> Security Agreement wherein User is debtor and
> Phillip Anthony Lacefield(c) is Secured Party, and
> signifies that User:  (1) grants Secured Party a security
> interest in <u>all</u> of User's interest in assets, land, and
> personal property, in the <u>sum certain amount</u> of
> <u>$500,000.00 (Five Hundred Thousand U.S. Dollars)</u> per <u>each</u>
> occurrence of use of any of the common-law Copyrighted
> trade names/trademarks PHILLIP ANTHONY LACEFIELD(c), as
> well as for each and every occurrence of use of any and
> all derivatives of, and variations in the spelling of,
> respectively, PHILLIP ANTHONY LACEFIELD(c), not excluding
> "Phillip Anthony Lacefield(c)," respectively, <u>plus costs</u>,
> <u>plus treble (triple) damages</u>; (2) authenicates this
> Security Agreement wherein User is debtor and
> Phillip Anthony Lacefield(c) is Secured Party, and wherein
> User pledges all of User's property...

COPYRIGHT NOTICE for PHILLIP ANTHONY LACEFIELD(c), Page 1 of 2
filed with Kentucky Secretary of State and Arkansas Secretary of
State, and attached hereto and incorporated herein the same as
if it were fully set out herein.  (emphasis added)

## LEGAL CLAIMS

    11.  Pursuant to the facts stated supra, all of the

Defendants have, in fact, injured the Plaintiff in his business

and property--as they conspired with each other so to do--and are

all therefore jointly and severally liable to Plaintiff for treble

damages under the Civil R.I.C.O. Statute, 18 U.S.C. § 1964(c).

See supra, especially ¶ 10 supra.  Plaintiff was injured in his

business and property--by the Defendants--by reason of a violation

of section 1962 of Title 18 U.S.C., and he may therefore sue these

Defendants in this appropriate Court and shall (must) recover at

least threefold the damages he sustained and the cost of the suit,

including a reasonable attorney's fee. See 18 U.S.C. § 1964(c).
See also ¶ 10 supra. Since, inter alia, Plaintiff's Copyrighted
Property has been copied (infringed upon) by all of the
Defendants continuously (every day) since on or about March 2001
until the present (2007)--multiple times each day, see e.g.
Exhibits A, C, and D, and Court documents incorporated by reference
supra--and each infringement was unauthorized by the Plaintiff and
is therefore subject to the unauthorized usage fee of "$500,000.00
(Five Hundred Thousand U.S. Dollars) per each occurrence of use"
by all Defendants, then all Defendants are already indebted to
the Plaintiff for at least Seventy-Five Billion United States
Dollars ($75,000,000,000.00 U.S.) in damages, which does not even
include future damages or punitive damages, inter alia. I.e.,
all of the Defendants have jointly and severally participated in,
inter alia, over 50,000 unauthorized infringements of Plaintiff's
Copyrighted Property, resulting in at least $75,000,000,000.00
U.S. Dollars in damages, pursuant to 18 U.S.C. § 1964(c) and
Plaintiff's published Copyright Notice cited and quoted supra.

    12. Since all of the Defendants acted willfully and
knowingly in their participation in their instant Conspiracy to
Violate R.I.C.O., 18 U.S.C. § 1961 et seq., in violation of
18 U.S.C. § 1962(d), damages due the Plaintiff by all of the
Defendants is subject to trebling. See e.g. ¶¶ 6, 7, 8 supra.
See also 18 U.S.C. § 1964(c)("Any person injured in his business
or property by reason of a violation of section 1962 of this
chapter may sue therefor in any appropriate United States district
court and shall [must] recover threefold the damages he sustains

8

and the cost of the suit, including a reasonable attorney's fee.").
(emphasis in original and emphasis added, respectively) See also
Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A"),
§ 9, § 11, and 176D, cited in Cabana v.Forcier, 200 F.R.D. 9,
13-14, No. 99-40071-NMG (D.Mass March 30, 2001)("§ 11 of chapter
93A...provides for treble damages for unfair or deceptive acts").
The acts of all of the Defendants were both unfair and deceptive.

## RELIEF REQUESTED

13.    Trial by jury on all issues triable by jury.

14.    Compensatory, general, and special damages from each
of the defendants in the sum certain amount of Twenty-Five Billion
United States Dollars ($25,000,000,000.00 U.S.).

15.    Punitive damages from each of the defendants in the
sum certain amount of Twenty-Five Billion United States Dollars
($25,000,000,000.00 U.S.).

16.    Leave by the Honorable Court to amend this Complaint,
once Plaintiff's discovery is complete.

17.    That the Defendants pay for the entire cost of this suit.

18.    That, pursuant to, inter alia, 18 U.S.C. § 1964(c) and
Massachusetts C.P.A., M.G.L. c. 93A, § 9, § 11, and 176D, supra,
all of the defendants be Ordered by this Honorable Court to pay
treble the damages named supra, i.e. One Hundred and Fifty Billion
United States Dollars ($150,000,000,000.00 U.S.) to the Plaintiff.

19.    That all of the defendants be Ordered by this Honorable
Court to IMMEDIATELY post cash or surety bonds sufficient enough
to secure the payment of each defendants' liabilities and damages
due to the Plaintiff enumerated supra, which is at least

9

One Hundred and Fifty Billion United States Dollars
($150,000,000,000.00 U.S.).

    20. WHEREFORE, ALL PREMISES CONSIDERED, the Plaintiff
demands judgment against all of the defendants for damages named
and enumerated supra and such other relief as this Honorable
Court deems just.

    21. The Plaintiff demands a trial by jury.

                              Respectfully submitted,


                              _____
                              Phillip Lacefield, Pro Se
                              for Plaintiff PHILLIP LACEFIELD
                              P.O. Box 3000
                              Forrest City, Arkansas 72336-3000
                              870/630-6000


Dated:  August 1, 2007
        Forrest City, Arkansas


                    CERTIFICATE OF SERVICE

    I, Phillip Lacefield, Pro Se, hereby certify that a true
and exact copy of the foregoing AMENDED COMPLAINT, concerning
Civil Action No. 05-11581-RCL, has been filed, delivered, and
served, via U.S. Mail, first-class postage prepaid, deposited
in the Legal Mail Mailbox, located at FCC Forrest City,
Forrest City, Arkansas 72335, to the following persons and
addresses:

    Attorneys of record for all Defendants,

THIS, the 2nd Day of August, 2007.


                              _____
                              Phillip Lacefield, Pro Se


                    Page 10 of 10

<<Back



## PHIL LACEFIELD

Phil Lacefield of Bartlett lured investors into paying thousands of dollars for overpriced office equipment to access an Internet mall, promising big returns on the mall's sales. Turns out Lacefield has no connection to any Internet mall. He was arrested in 1999 on theft charges related to a similar fraud. Then in February 2002, Lacefield was arrested by the FBI on 19 federal counts of fraud related to his office equipment scheme (see story headline "Bartlett Scam Artist Back On The Streets" in the On Your Side Investigators section of www.wreg.com ). His federal trial is scheduled for some time in the summer. Phil Lacefield...YOU are "Risky Business."

 WorldNow

Send questions or comments about this web site to news@wreg.com
All content © Copyright 2001 - 2007 WorldNow and WREG. All Rights Reserved.
For more information on this site, please read our Privacy Policy and Terms of Service.

5X

```
EXHIBIT A
Page 1 of 5
```



WREG-TV Memphis - Bartlett ID Thief Sentenced To Decade In Prison                    Page 1 of 2



<<Back

**Bartlett ID Thief Sentenced To Decade In Prison**

Wednesday, October 29

By Andy Wise

**FEDERAL COURT, MEMPHIS** - A federal judge has sentenced a former Bartlett businessman to nine years in prison for an elaborate identity theft scheme that employed virtually every fraud in the federal code.

Phil Lacefield will also have to pay more than $300,000 in restitution to one corporation and six of his victims.

"I'm sorry for this whole situation," Lacefield said in a statement before the court. "I wish it never happened."

In February, Phil Lacefield pleaded guilty to six of 19 counts of identity theft, forgery, money-laundering, mail fraud and wire fraud after a jury convicted him on a separate indictment of wire fraud, mail fraud and lying to bank officials and federal officers.

He stole the identities of a dozen people, assumed their credit and used it to sell credit card processing machines and other office equipment through bogus leases to unsuspecting customers. The original indictment accused him of bilking consumers for more than $56,000 in the scheme. Investigators froze at least two of Lacefield's bank accounts in search of $450,000 in assets he may have procured with the money.

At the start of Lacefield's sentencing hearing, Assistant U.S. Attorney Tracy Berry told U.S. District Judge Samuel "Hardy" Mays that there may be more victims in Lacefield's scheme than they thought.

"Mr. Lacefield may have more than 50 victims and at least two corporations that fell prey to his scheme," says Berry.

Lacefield's attorney, Michael Scholl, disputed Berry's figures in court. 3 On Your Side could not reach him for comment.

Berry says while out on bond for his 2002 arrest, Lacefield hid as many as four accounts, all at First Tennessee Bank, from federal pre-trial services. He has a savings account and a checking account at First Tennessee, each with an undisclosed balance. Berry says Lacefield also withdrew more than $28,000 from a First Tennessee certificate of deposit. Lacefield was required to release all of his personal financial information to prosecutors as a condition of his bond.

In two days of testimony on the bank fraud charges, Lacefield refused to testify, offered no witnesses and left himself at the mercy of the prosecution. It offered testimony and documentation indicating Lacefield made false statements to bank officials about his income, his residence and his employment in order to secure new loans -- all during the period he was out on bond for his original arrest.

Lacefield lied on a mortgage statement to Tennessee Mortgage Funding in Nashville, Tennessee, which faxed the false information to Conseco Bank, Inc., in Greensboro, North Carolina. Lacefield also gave a false home address and lied about his credit and income to apply for a loan with First

---

WREG-TV Memphis - Bartlett ID Thief Sentenced To Decade In Prison                    Page 2 of 2

Tennessee Bank and American General. Berry says Lacefield used that information to obtain thousands of dollars in loans, which he failed to report to his bond officer as required after his arrest.

"The bottom line in this case is money," says Berry, "and Lacefield's desire to accumulate as much money as he can by any means necessary."

In the last decade, Lacefield has quickly racked up a pattern of consumer fraud.

In March 2001, "3 On Your Side" first reported how Lacefield used a client's credit identity to become a representative of Leasecomm, a Massachusetts leasing company. He then used that relationship to lure investors into leasing Internet phones and credit card processing machines at inflated prices by promising them profits from his arrangement with Big Planet, a Utah company that runs an Internet shopping mall. But a spokesperson for the company said Lacefield no longer had anything to do with the company's Internet mall after it terminated its relationship with him for "illegal activity."

In November 2001, "3 On Your Side" obtained documents on Lacefield from the Tennessee Department of Commerce and Insurance. According to the documents, Lacefield was an insurance agent in the early '90s. Nine of his clients sued him under the department's administrative proceedings. The documents show Lacefield's clients alleged he "verbally misrepresented the terms of a proposed insurance policy as a major medical policy." In fact, the documents show most of the policies Lacefield sold were only hospitalization policies.

One of his victims was Cathy Sanborn, a partner at the Collins & Associates CPA firm in East Memphis. Sanborn said she had to put her husband with severe heart disease on the state TennCare plan after she found out the policy she bought from Lacefield was worthless.

"In all our encounters with him, he showed no remorse or even would not admit that he'd done anything wrong or that he had misrepresented anything," Sanborn says.

The state revoked Lacefield's insurance license and fined him $7,000.

Shelby County deputies arrested Lacefield in November 1999 on a theft charge. A former office manager at Green Games on Overton Crossing charged Lacefield with selling her a credit card processing machine that didn't work for more than $1,000. According to the court affidavit, Lacefield also set the manager up on a credit account that didn't exist. But Lacefield's case was bound over to the Shelby County grand jury for 22 months. Prosecutors later dropped the case for lack of evidence.

"They felt under the state statutes that this did not arise to theft," says Shelby County Deputy District Attorney General James Challen.

Lacefield plans to appeal his case. He's doing his time at a federal prison in Oakdale, Louisiana. After completing his sentence, he will be under supervised release for three years, and he will not be allowed to work any job that has access to peoples' personal information. Under the rules of federal sentencing, Lacefield will not be eligible for parole.

31 X

WorldNow

Send questions or comments about this web site to news@wreg.com.
All content © Copyright 2001 - 2007 WorldNow and WREG. All Rights Reserved.
For more information on this site, please read our Privacy Policy and Terms of Service.



<<Back

### Classified Ads: Between The Lines

Updated 4:49 PM, Thursday, July 25

By Andy Wise

**EAST MEMPHIS** -- The Mid-South's largest circular of classified ads is changing its policies after the On Your Side Investigators discover more than a quarter of its ads are riddled with unlicensed contractors and companies with shoddy service records.

Every Wednesday, more than 200,000 copies of the Shoppers News & Guide show up on doorsteps and driveways in Shelby and Desoto counties. Each issue carries more than 300 service ads, from building contractors to carpet cleaners. The On Your Side Investigators ran background checks on 339 ads in the June 12 issue. 14 of the companies have unsatisfactory records with the Mid-South Better Business Bureau for poor service, products, repairs or broken contracts. 32 have no state contractor's or home improvement license to do the jobs they advertise. 42 refused to respond to the BBB when it requested information about them.

Fred Eason has either owned or run the Shoppers News since 1956. He says his staff doesn't have time to check the service records of every company that advertises in the paper, and it's up to consumers to do the checking. "If you contract with a person out of our paper, you and him make a contract, and he doesn't fulfill it, I can't get in the middle of it,"says Eason. "We try to mediate when we can, but we're not the judge and jury."

Sheila Crum helps direct the Mid-South Better Business Bureau's Advertising Review Board. She says publications like the Shoppers News and Guide have an ethical obligation to screen their advertising. "If (consumers) fall for the advertising --they send their money for something -- and they find out that it's fraudulent, who else do they have to blame? They have the advertiser," says Crum.

The classified ad policies of some Mid-South newspapers leave a lot to be desired. The Memphis Business Journal and the Commercial Appeal are the only papers with strict codes of ethics for their classified ads. The Commercial Appeal refuses to accept ads that demand advanced fees, and it publishes a disclaimer in its service directory that warns readers to be cautious when they choose a contractor.

✓
✓ But even the best ad policy can let a bad business slip through. Bartlett businessman Phil Lacefield, convicted by a federal jury for an elaborate identity theft scheme, began his paper trail with a classified ad in the Commercial Appeal.

"We work closely with the Better Business Bureau in trying to identify dishonest advertisers," says Jim Hollenbeck, Classified Advertising Manager for the Commercial Appeal. "(We) act quickly to pull an advertisement whenever our readers report a situation that could be considered a bad practice."

After our investigation, Eason and his staff decided to require license numbers on every service ad in the Shoppers News and Guide. Each issue will also carry this disclaimer: *Advertising published in the Shoppers News and Guide is accepted on the premise that these are reputable businesses, and we encourage our customers to ask for a copy of their license and for references. We suggest that they NOT pay for any service before it is completed successfully, and we are publishing the Better Business Bureau's phone number.*



"We're definitely going to put a disclaimer in there similar to what the Commercial Appeal's got in there,"says Eason. "We want to be a good citizen, too."

When you shop classified ads, run the company's or individual's names or phone numbers through the BBB's website (www.midsouth.bbb.org). Check out their service records.

If you're shopping ads for plumbers or electricians, shop the ones that list their county-issued license numbers, then confirm those numbers with Memphis-Shelby County Construction Code Enforcement (385-5075).

Building contractors who do jobs for more than $3,000 must have state-issued contractor's or home improvement licenses. Those can be instantly verified on state government websites. For Tennessee contractors: www.state.tn.us/commerce. For Mississippi contractors: www.msboc.state.ms.us. For Arkansas contractors: www.state.ar.us/clb.

Although lawyers are not required to be members of local and state bar associations, 3 On Your Side recommends shopping those who are members. To check up on a Tennessee lawyer: www.tba.org. Mississippi: www.msbar.org. Arkansas: www.arkbar.com.

You can now check the licenses, education and disciplinary actions of doctors on most state websites. For Tennessee doctors: www.state.tn.us/health. Mississippi: www.msdh.state.ms.us. Arkansas: www.healthyarkansas.com.

Don't forget to get at least 3 estimates on a job before you hire a business or contractor. Get references and ask to see their work from past jobs, and remember, NEVER pay the full amount up front. Tennessee law allows contractors to receive no more than one-third of the total price up front.



Send questions or comments about this web site to ncns@wreg.com
All content © Copyright 2001 - 2007 WorldNow and WREG. All Rights Reserved.
For more information on this site, please read our Privacy Policy and Terms of Service.

EXHIBIT B
Page 1 of 8

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

In care of:
Post Office Box 3000
Forrest City 72336-3000
Arkansas
Phillip Lacefield

2007-2220523-65.01
Kentucky Secretary of State
File Date 1/26/2007 4:30:00 PM
Status Active
Fee $20.00

✓

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| LACEFIELD | PHILLIP | ANTHONY | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| P.O. Box 3000 | Forrest City | AR | 72336-3000 | US |

1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | NONE

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| Lacefield | Phillip | Anthony | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| In care of: Post Office Box 3000 | Forrest City | Ark. | Near [72336] | USA |

4. This FINANCING STATEMENT covers the following collateral:

All of debtor's assets, land, and personal property, and all of debtor's interest in said assets, land, and personal property, now owned and hereafter acquired, now existing and hereafer arising, and wherever located, described fully in, and pursuant to, Security Agreement No. PAL-013175-SA, dated the Thirty-First Day of the First Month in the Year of Our Lord One Thousand Nine Hundred Seventy-Five, and also pursuant to the attached and incorporated COPYRIGHT NOTICE for PHILLIP ANTHONY LACEFIELD(c)--attached to and incorporated into this instant UCC FINANCING STATEMENT (FORM UCC1 and FORM UCC1Ad). Inquiring parties my consult directly with Secured Party for ascertaining, in detail, the financial relationship and contractual obligations associated with this commercial transaction, identified in security agreement referenced above. Adjustment of this filing is in accord with UCC §§ 1-103, 1-104, and House Joint Resolution 192 of June 5, 1933. Secured Party Accepts Debtor's signature in accord with UCC §§ 1-201(39), 3-401. Maximum principal indebtedness is One Hundred Billion United States Dollars ($100,000,000,000.00).

5. ALTERNATIVE DESIGNATION [if applicable]: LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING

6. [X] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02) International Association of Commercial Administrators (IACA)

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| LACEFIELD | PHILLIP | ANTHONY |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | NONE

12. ADDITIONAL SECURED PARTY'S or ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

13. This FINANCING STATEMENT covers [ ] timber to be cut or [ ] as-extracted collateral, or is filed as a [X] fixture filing.

14. Description of real estate:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

16. Additional collateral description:

Debtor's State of Kentucky, Country of United States, Original Birth Certificate is incorporated by reference herein in its entirety.

Debtor's Country of United States Citizen Social Security Card, including debtor's CUSIP and AUTOTRIS Social Security Number and Name (front and back of card), is incorporated by reference herein in its entirety.

17. Check only if applicable and check only one box.

Debtor is a [ ] Trust or [ ] Trustee acting with respect to property held in trust or [ ] Decedent's Estate

18. Check only if applicable and check only one box.

[X] Debtor is a TRANSMITTING UTILITY

[ ] Filed in connection with a Manufactured-Home Transaction — effective 30 years

[ ] Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02) International Association of Commercial Administrators (IACA)

COPYRIGHT NOTICE for PHILLIP ANTHONY LACEFIELD(c)

COPYRIGHT NOTICE. All rights reserved re common-law Copyright of trade names/trademarks PHILLIP ANTHONY LACEFIELD(c)--as well as any and all derivatives and variations in the spelling of any of said trade names/trademarks, not excluding "Phillip Anthony Lacefield(c)" respectively--Common-Law Copyright(c) 1975 respectively, by Phillip Anthony Lacefield(c). Said common-law trade names/trademarks, i.e., PHILLIP ANTHONY LACEFIELD(c), may neither be used, nor reproduced, neither in whole nor in part, nor in any manner whatsoever, without the prior, express, written consent and acknowledgment of Phillip Anthony Lacefield(c), as signified by the red-ink signature of Phillip Anthony Lacefield(c), hereafter "Secured Party." WITH THE INTENT OF BEING CONTRACTUALLY BOUND, any juristic person, as well as any agent of said juristic person, shall not display, nor otherwise use in any manner, any of the common-law trade names/trademarks PHILLIP ANTHONY LACEFIELD(c), nor the common-law Copyright described herein, nor any derivative of, nor any variation in the spelling of PHILLIP ANTHONY LACEFIELD(c), without the prior, express, written consent and acknowledgment of Secured Party, as signified by Secured Party's signature in red ink. Secured Party neither grants, nor implies, nor otherwise gives consent for any unauthorized use of any of PHILLIP ANTHONY LACEFIELD(c), and all such use is strictly prohibited. Secured Party is not now, nor has Secured Party ever been, an accommodation party, nor a surety, for any of the purported debtors, i.e., PHILLIP ANTHONY LACEFIELD(c), nor for any other juristic person, and is so indemnified and held harmless by PHILLIP ANTHONY LACEFIELD(c), Debtor in Hold Harmless and Indemnity Agreement No. PAL-013175-HHIA, dated the Thirty-First Day of the First Month in the Year of our Lord One Thousand Nine Hundred Seventy-Five, against any and all claims, legal actions, orders, warrants, judgments, demands, liabilities, losses, depositions, dispositions, summonses, lawsuits, costs, fines, liens, levies, penalties, damages, interests, interest, and expenses, et al., etc., whatsoever, both absolute and contingent, as are due and as might become due, now existing and as might hereafter arise, and as might be suffered by, imposed on, and incurred by Debtor PHILLIP ANTHONY LACEFIELD(c) for any and every reason, purpose, and cause whatsoever. SELF-EXECUTING CONTRACT/SECURITY AGREEMENT IN EVENT OF UNAUTHORIZED USE: By this Copyright Notice, both the juristic person and any agent of said juristic person, hereinafter jointly and severally "User," consent and agree that any use of any of PHILLIP ANTHONY LACEFIELD(c), other than authorized use as set forth above, constitutes, inter alia, unauthorized use, i.e., counterfeiting, of Secured Party's common-law Copyrighted property, contractually binds User, renders this Copyright Notice a Security Agreement wherein User is debtor and Phillip Anthony Lacefield(c) is Secured Party, and signifies that User: (1) grants Secured Party a security interest in all of User's interest in assets, land, and personal property, in the sum certain amount of $500,000.00 (Five Hundred Thousand U.S. Dollars) per each occurrence of use of any of the common-law Copyrighted trade names/trademarks PHILLIP ANTHONY LACEFIELD(c), as well as for each and every occurrence of use of any and all derivatives of, and variations in the spelling of, respectively, PHILLIP ANTHONY LACEFIELD(c), not excluding "Phillip Anthony Lacefield(c)," respectively, plus costs, plus treble (triple) damages; (2) authenticates this Security Agreement wherein User is debtor and Phillip Anthony Lacefield(c) is Secured Party, and wherein User pledges all of User's property, i.e., all assets, land, consumer goods, farm products, inventory, equipment, money, investment property, commercial tort claims, letters of credit, letter-of-credit rights, chattel paper, instruments, deposit accounts, accounts, documents, and general intangibles, and all User's interest in all such foregoing property, inter alia, et al., etc., now owned and hereafter acquired, now existing and hereafter arising, and wherever located, as collateral for securing User's contractual obligation in favor of Secured Party for User's unauthorized use of Secured Party's common-law Copyrighted property; (3) consents and agrees with Secured Party's filing of a UCC FINANCING STATEMENT in the UCC filing office, as well as in any county recorder's office, wherein User is debtor and Phillip Anthony Lacefield(c) is Secured Party; (4) consents and agrees that said UCC FINANCING STATEMENT described above in paragraph "(3)" is a continuing financing statement, and further consents and agrees with Secured Party's filing of any continuation statement necessary for maintaining Secured Party's perfected security interest in all of User's property and interest proprty, pledged as collateral in this Security Agreement and described above in paragraph "(2)," until User's contractual obligation therefore incurred has been fully satisfied; (5) consents and agrees with Secured Party's filing of any UCC FINANCING STATEMENT, as described above in paragraphs "(3)" and "(4)," as well as the filing of any Security Agreement, as described above in paragraph "(2)," in the UCC filing office, as well as in any county recorder's office; (6) consents and agrees that any and all such filings described in paragraphs "(4)" and "(5)" above are not, and may not be

considered, bogus, and that User will not claim that any such filing is bogus; (7) waives all defenses; and (8) appoints Secured Party as Authorized Representative for User, effective upon User's default re User's contractual obligations in favor of Secured Party as set forth below under "Payment Terms" and "Default Terms," granting Secured Party full authorization and power for engaging in any and all actions on behalf of User, as Secured Party, in Secured Party's sole discretion, deems appropriate, and User further consents and agrees that this appointment of Secured Party as Authorized Representative for User, effective upon User's default, is irrevocable and coupled with a security interest. USER FURTHER CONSENTS AND AGREES WITH ALL OF THE FOLLOWING ADDITIONAL TERMS OF SELF-EXECUTING CONTRACT/SECURITY AGREEMENT IN EVENT OF UNAUTHORIZED USE: PAYMENT TERMS: In accordance with fees for unauthorized use of any of PHILLIP ANTHONY LACEFIELD(c) as set forth above, User hereby consents and agrees that User shall pay Secured Party all unauthorized-use fees in full within ten (10) days of the date User is sent Secured Party's invoice, hereinafter "Invoice," itemizing said fees. DEFAULT TERMS: In event of non-payment in full of all unauthorized-use fees by User within ten (10) days of date Invoice is sent, User shall be deemed in default and: (a) all of User's property and interest in property pledged as collateral by User, as described above in paragraph "(2)," immediately becomes, i.e., is, property of Secured Party; (b) Secured Party is appointed User's Authorized Representative as set forth in paragraph "(8);" and (c) User consents and agrees that Secured Party may take possession of, as well as otherwise dispose of in any manner that Secured Party, in Secured Party's sole discretion, deems appropriate, including, but not limited by, sale at auction, at any time following User's default, and without further notice, any and all of User's former property and interest in property, as described above in paragraph "(2)," formerly pledged as collateral by User, now property of Secured Party, in respect of this "Self-executing Contract/Security Agreement in Even of Unauthorized Use," that Secured Party, again in Secured Party's sole discretion, deems appropriate. TERMS FOR CURING DEFAULT: Upon event of default, as set forth above under "Default Terms," irrespective of any and all of User's former property and interest in property, in the possession of, as well as disposed of by, Secured Party, as authorized above under "Default Terms," User may cure User's default re only the remainder of User's former property and interest in property formerly pledged as collateral that is neither in the possession of, nor otherwise disposed of by, Secured Party within twenty (20) days of date of User's default only by payment in full. TERMS OF STRICT FORECLOSURE: User's non-payment in full of all unauthorized-use fees itemized in Invoice within said twenty- (20) day period for curing default as set forth above under "Terms for Curing Default" authorizes Secured Party's immediate non-judicial strict foreclosure on any and all remaining property and interest in property formerly pledged as collateral by User, now property of Secured Party, which is not in the possession of, nor otherwise disposed of by, Secured Party upon expiration of said twenty- (20) day default-curing period. Ownership subject to common-law Copyright, and UCC FINANCING STATEMENT and Security Agreement filed with the UCC filing office. Record Owner: Phillip Anthony Lacefield(c). Autograph Common Law Copyright (c) 1975. Unauthorized use of any of "Phillip Anthony Lacefield(c)" incurs same unauthorized-use fees as those associated with PHILLIP ANTHONY LACEFIELD(c), respectively, as set forth above in paragraph "(1)" under "Self-executing Contract/Security Agreement in Event of Unauthorized Use."


*Phillip Anthony Lacefield* ©

Phillip Anthony Lacefield(c)

Secured Party, Agent, and Attorney in Fact

No. PAL-013175-CLC                    Copyright Notice--Single

Page 1 of 2

No. PAL-013175-CLC                    Copyright Notice--Single

Page 2 of 2

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
┌                                                    ┐
  In care of:
      Post Office Box 3000
      Forrest City 72336-3000
      Arkansas
      Phillip Lacefield
```

Arkansas Secretary of State
Filing_Number : 51276157337
Doc Nr.: 3184760002
Date Filed: 08-23-2005 10:00 AM
Total Pages: 4

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| LACEFIELD | PHILLIP | ANTHONY | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 3000 | Forrest City | AR | 72336-3000 | US |

3. SECURED PARTY'S NAME

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Lacefield | Phillip | Anthony | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| In care of: Post Office Box 3000 | Forrest City | Ark. Near [72336] | USA |

4. This FINANCING STATEMENT covers the following collateral:
All of debtor's assets, land, and personal property, and all of debtor's interest in said assets, land, and personal property, now owned and hereafter acquired, now existing and hereafter arising, and wherever located, described fully in, and pursuant to, Security Agreement No. PAL-013175-SA, dated the Thirty-First Day of the First Month in the Year of Our Lord One Thousand Nine Hundred Seventy-Five, and also pursuant to the attached and incorporated COPYRIGHT NOTICE for PHILLIP ANTHONY LACEFIELD(c)--attached to and incorporated into this instant UCC FINANCING STATEMENT (FORM UCC1 and FORM UCC1Ad). Inquiring parties may consult directly with Secured Party for ascertaining, in detail, the financial relationship and contractual obligations associated with this commercial transaction, identified in security agreement referenced above. Adjustment of this filing is in accord with UCC §§ 1-103, 1-104, and House Joint Resolution 192 of June 5, 1933. Secured Party Accepts Debtor's signature in accord with UCC §§ 1-201(39), 3-401. Maximum principal indebtedness is One Hundred Billion United States Dollars ($100,000,000,000.00).

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)
International Association of Commercial Administrators (IACA)

---

**UCC FINANCING STATEMENT ADDENDUM**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| LACEFIELD | PHILLIP | ANTHONY |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)
International Association of Commercial Administrators (IACA)

COPYRIGHT NOTICE for PHILLIP ANTHONY LACEFIELD(c)

COPYRIGHT NOTICE: All rights reserved re common-law Copyright of trade names/trademarks PHILLIP ANTHONY LACEFIELD(c)—as well as any and all derivatives and variations in the spelling of any of said trade names/trademarks, not excluding "Phillip Anthony Lacefield(c)" respectively.—Common-Law Copyright(c) 1975 respectively, by Phillip Anthony Lacefield(c). Said common-law trade names/trademarks, i.e., PHILLIP ANTHONY LACEFIELD(c), may neither be used, nor reproduced, neither in whole nor in part, nor in any manner whatsoever, without the prior, express, written consent and acknowledgment of Phillip Anthony Lacefield(c), as signified by the red-ink signature of Phillip Anthony Lacefield(c), hereafter "Secured Party." WITH THE INTENT OF BEING CONTRACTUALLY BOUND, any juristic person, as well as any agent of said juristic person, shall not display, nor otherwise use in any manner, any of the common-law trade names/trademarks PHILLIP ANTHONY LACEFIELD(c), nor the common-law Copyright described herein, nor any derivative of, nor any variation in the spelling of PHILLIP ANTHONY LACEFIELD(c), without the prior, express, written consent and acknowledgment of Secured Party, as signified by Secured Party's signature in red ink. Secured Party neither grants, nor implies, nor otherwise gives consent for any unauthorized use of any of PHILLIP ANTHONY LACEFIELD(c), and all such use is strictly prohibited. Secured Party is not now, nor has Secured Party ever been, an accommodation party, nor a surety, for any of the purported debtors, i.e., PHILLIP ANTHONY LACEFIELD(c), nor for any other juristic person, and is so indemnified and held harmless by PHILLIP ANTHONY LACEFIELD(c), Debtor in Hold Harmless and Indemnity Agreement No. PAL-013175-HHIA, dated the Thirty-First Day of the First Month in the Year of our Lord One Thousand Nine Hundred Seventy-Five, against any and all claims, legal actions, orders, warrants, judgments, demands, liabilities, losses, depositions, dispositions, summonses, lawsuits, costs, fines, liens, levies, penalties, damages, interests, interest, and expenses, et al., etc., whatsoever, both absolute and contingent, as are due and as might become due, now existing and as might hereafter arise, and as might be suffered by, imposed on, and incurred by Debtor PHILLIP ANTHONY LACEFIELD(c) for any and every reason, purpose, and cause whatsoever. SELF-EXECUTING CONTRACT/SECURITY AGREEMENT IN EVENT OF UNAUTHORIZED USE: By this Copyright Notice, both the juristic person and any agent of said juristic person, hereinafter jointly and severally "User," consent and agree that any use of any of PHILLIP ANTHONY LACEFIELD(c), other than authorized use as set forth above, constitutes, inter alia, unauthorized use, i.e., counterfeiting, of Secured Party's common-law Copyrighted property, contractually binds User, renders this Copyright Notice a Security Agreement wherein User is debtor and Phillip Anthony Lacefield(c) is Secured Party, and signifies that User: (1) grants Secured Party a security interest in all of User's interest in assets, land, and personal property, in the sum certain amount of $500,000.00 (Five Hundred Thousand U.S. Dollars) per each occurrence of use of any of the common-law Copyrighted trade names/trademarks PHILLIP ANTHONY LACEFIELD(c), as well as for each and every occurrence of use of any and all derivatives of, and variations in the spelling of, respectively, PHILLIP ANTHONY LACEFIELD(c), not excluding "Phillip Anthony Lacefield(c)," respectively, plus costs, plus treble (triple) damages; (2) authenticates this Security Agreement wherein User is debtor and Phillip Anthony Lacefield(c) is Secured Party, and wherein User pledges all of User's property, i.e., all assets, land, consumer goods, farm products, inventory, equipment, money, investment property, commercial tort claims, letters of credit, letter-of-credit rights, chattel paper, instruments, deposit accounts, accounts, documents, and general intangibles, and all User's interest in all such foregoing property, inter alia, et al., etc., now owned and hereafter acquired, now existing and hereafter arising, and wherever located, as collateral for securing User's contractual obligation in favor of Secured Party for User's unauthorized use of Secured Party's common-law Copyrighted property; (3) consents and agrees with Secured Party's filing of a UCC FINANCING STATEMENT in the UCC filing office, as well as in any county recorder's office, wherein User is debtor and Phillip Anthony Lacefield(c) is Secured Party; (4) consents and agrees that said UCC FINANCING STATEMENT described above in paragraph "(3)" is a continuing financing statement, and further consents and agrees with Secured Party's filing of any continuation statement necessary for maintaining Secured Party's perfected security interest in all of User's property and interest property, pledged as collateral in this Security Agreement and described above in paragraph "(2)," until User's contractual obligation therefore incurred has been fully satisfied; (5) consents and agrees with Secured Party's filing of any UCC FINANCING STATEMENT, as described above in paragraphs "(3)" and "(4)," as well as the filing of any Security Agreement, as described above in paragraph "(2)," in the UCC filing office, as well as in any county recorder's office; (6) consents and agrees that any and all such filings described in paragraphs "(4)" and "(5)" above are not, and may not be

No. PAL-013175-CLC                    Copyright Notice—Single

Page 1 of 2

considered, bogus; and that User will not claim that any such filing is bogus; (7) waives all defenses; and (8) appoints Secured Party as Authorized Representative for User, effective upon User's default at User's contractual obligations in favor of Secured Party as set forth below under "Payment Terms" and "Default Terms," granting Secured Party full authorization and power for engaging in any and all actions on behalf of User, as Secured Party, in Secured Party's sole discretion, deems appropriate, and User further consents and agrees that this appointment of Secured Party as Authorized Representative for User, effective upon User's default, is irrevocable and coupled with a security interest. USER FURTHER CONSENTS AND AGREES WITH ALL OF THE FOLLOWING ADDITIONAL TERMS OF SELF-EXECUTING CONTRACT/SECURITY AGREEMENT IN EVENT OF UNAUTHORIZED USE: PAYMENT TERMS: In accordance with fees for unauthorized use of any of PHILLIP ANTHONY LACEFIELD(c) as set forth above, User hereby consents and agrees that User shall pay Secured Party all unauthorized-use fees in full within ten (10) days of the date User is sent Secured Party's invoice, hereinafter "Invoice," itemizing said fees. DEFAULT TERMS: In event of non-payment in full of all unauthorized-use fees by User within ten (10) days of date Invoice is sent, User shall be deemed in default and: (a) all of User's property and interest in property pledged as collateral by User, as described above in paragraph "(2)," immediately becomes, i.e., is, property of Secured Party; (b) Secured Party is appointed User's Authorized Representative as set forth above in paragraph "(8);" and (c) User consents and agrees that Secured Party may take possession of, as well as otherwise dispose of in any manner that Secured Party, in Secured Party's sole discretion, deems appropriate, including, but not limited by, sale at auction, at any time following User's default, and without further notice, any and all of User's former property and interest in property, as described above in paragraph "(2)," formerly pledged as collateral by User, now property of Secured Party, in respect of this "Self-executing Contract/Security Agreement in Event of Unauthorized Use," that Secured Party, again in Secured Party's sole discretion, deems appropriate. TERMS FOR CURING DEFAULT: Upon event of default, as set forth above under "Default Terms," irrespective of any and all of User's former property and interest in property, in the possession of, as well as disposed of by, Secured Party, as authorized above under "Default Terms," User may cure User's default re only the remainder of User's former property and interest in property formerly pledged as collateral that is neither in the possession of, nor otherwise disposed of by, Secured Party within twenty (20) days of date of User's default only by payment in full. TERMS OF STRICT FORECLOSURE: User's non-payment in full of all unauthorized-use fees as those associated within said twenty- (20) day period for curing default as set forth above under "Terms for Curing Default" authorizes Secured Party's immediate non-judicial strict foreclosure on any and all remaining property and interest in property formerly pledged as collateral by User, now property of Secured Party, which is not in the possession of, nor otherwise disposed of by, Secured Party upon expiration of said twenty- (20) day default-curing period. Ownership subject to common-law Copyright, and UCC FINANCING STATEMENT and Security Agreement filed with the UCC filing office.
Record Owner: Phillip Anthony Lacefield(c).
Autograph Common Law Copyright (c) 1975. Unauthorized use of any of "Phillip Anthony Lacefield(c)" incurs same unauthorized-use fees as those associated with PHILLIP ANTHONY LACEFIELD(c), respectively, as set forth above in paragraph "(1)" under "Self-executing Contract/Security Agreement in Event of Unauthorized Use."


*Phillip Anthony Lacefield©*

Phillip Anthony Lacefield(c)

Secured Party, Agent, and Attorney in Fact

No. PAL-013175-CLC                    Copyright Notice—Single

Page 2 of 2

MEMBER CENTER: Create Account | Log In



| HOME | NEWS | WEATHER | SPORTS | MARKETPLACE | HEALTH | MY TOWN | LIFESTYLE |

**Watson's** WE WILL BEAT ANY COMPETITOR'S DEAL BY $200 GUARANTEED! 4 PERSON FROM SPA $1499

### Search Results

Your search returned approximately 3 results.

1. **PHIL LACEFIELD**
   Phil **Lacefield** of Bartlett lured investors into paying thousands of dollars for overpriced office equipment to access an Internet mall, promising big returns on the mall's sales. Turns out **Lacefield** has no connection to any Internet mall. He was arrested in 1999 on theft charges related to a...
   Last Modified 08/02/2004 07:28:48 PM

2. **Bartlett ID Thief Sentenced To Decade In Prison**
   Wednesday, October 29 By Andy Wise FEDERAL COURT, MEMPHIS - A federal judge has sentenced a former Bartlett businessman to nine years in prison for an elaborate identity theft scheme that employed virtually every fraud in the federal code. Phil **Lacefield** will also have to pay more than $300,000...
   Last Modified 06/10/2004 10:21:53 AM

3. **Classified Ads: Between The Lines**
   Updated 4:49 PM, Thursday, July 25 By Andy Wise EAST MEMPHIS -- The Mid-South's largest circular of classified ads is changing its policies after the On Your Side Investigators discover more than a quarter of its ads are riddled with unlicensed contractors and companies with shoddy service records....
   Last Modified 03/05/2004 12:28:27 PM

1

Search Again:  lacefield        [ Search ]

5x

```
EXHIBIT C
Page 1 of 1
```

**More Business News  more>>**

Whataburger's Real Secret Sauce

Nail That Siding Tight! Metal Thieves Grow Brash

When Betters Cars Are Built, Buick Will Build Them--in China!

Celebrities Speak On The American Dream

Caring, the Corporate Way

Quincy Jones III Builds a Digital Entertainment Brand

Foreclosure is an Equal Opportunity Threat

Finally, Know the Real MPG Before You Buy



<<Back



**Bartlett ID Thief Sentenced To Decade In Prison**

Wednesday, October 29

By Andy Wise

**FEDERAL COURT, MEMPHIS** - A federal judge has sentenced a former Bartlett businessman to nine years in prison for an elaborate identity theft scheme that employed virtually every fraud in the federal code.

Phil Lacefield will also have to pay more than $300,000 in restitution to one corporation and six of his victims.

"I'm sorry for this whole situation," Lacefield said in a statement before the court. "I wish it never happened."

In February, Phil Lacefield pleaded guilty to six of 19 counts of identity theft, forgery, money-laundering, mail fraud and wire fraud after a jury convicted him on a separate indictment of wire fraud, mail fraud and lying to bank officials and federal officers.

He stole the identities of a dozen people, assumed their credit and used it to sell credit card processing machines and other office equipment through bogus leases to unsuspecting customers. The original indictment accused Lacefield of bilking consumers for more than $56,000 in the scheme. Investigators froze at least two of Lacefield's bank accounts in search of $450,000 in assets he may have procured with the money.

At the start of Lacefield's sentencing hearing, Assistant U.S. Attorney Tracy Berry told U.S. District Judge Samuel "Hardy" Mays that there may be more victims in Lacefield's scheme than they thought.

"Mr. Lacefield may have more than 50 victims and at least two corporations that fell prey to his scheme," says Berry.

Lacefield's attorney, Michael Scholl, disputed Berry's figures in court. 3 On Your Side could not reach him for comment.

Berry says while out on bond for his 2002 arrest, Lacefield hid as many as four accounts, all at First Tennessee Bank, from federal pre-trial services. He has a savings account and a checking account at First Tennessee, each with an undisclosed balance. Berry says Lacefield also withdrew more than $28,000 from a First Tennessee certificate of deposit. Lacefield was required to release all of his personal financial information to prosecutors as a condition of his bond.

In two days of testimony on the bank fraud charges, Lacefield refused to testify, offered no witnesses and left himself at the mercy of the prosecution. It offered testimony and documentation indicating Lacefield made false statements to bank officials about his income, his residence and his employment in order to secure new loans -- all during the period he was out on bond for his original arrest.

Lacefield lied on a mortgage statement to Tennessee Mortgage Funding in Nashville, Tennessee, which faxed the false information to Conseco Bank, Inc., in Greensboro, North Carolina. Lacefield also gave a false home address and lied about his credit and income to apply for a loan with First

Tennessee Bank and American General. Berry says Lacefield used that information to obtain thousands of dollars in loans, which he failed to report to his bond officer as required after his arrest.

"The bottom line in this case is money," says Berry, "and Lacefield's desire to accumulate as much money as he can by any means necessary."

In the last decade, Lacefield has quickly racked up a pattern of consumer fraud.

In March 2001, "3 On Your Side" first reported how Lacefield used a client's credit identity to become a representative of Leasecomm, a Massachusetts leasing company. He then used that relationship to lure investors into leasing Internet phones and credit card processing machines at inflated prices by promising them profits from his arrangement with Big Planet, a Utah company that runs an Internet shopping mall. But a spokesperson for the company said Lacefield no longer had anything to do with the company's Internet mall after it terminated its relationship with him for "illegal activity."

In November 2001, "3 On Your Side" obtained documents on Lacefield from the Tennessee Department of Commerce and Insurance. According to the documents, Lacefield was an insurance agent in the early '90s. Nine of his clients sued him under the department's administrative proceedings. The documents show Lacefield's clients alleged he "verbally misrepresented the terms of a proposed insurance policy as a major medical policy." In fact, the documents show most of the policies Lacefield sold were only hospitalization policies.

One of his victims was Cathy Sanborn, a partner at the Collins & Associates CPA firm in East Memphis. Sanborn said she had to put her husband with severe heart disease on the state TennCare plan after she found out the policy she bought from Lacefield was worthless.

"In all our encounters with him, he showed no remorse or even would not admit that he'd done anything wrong or that he had misrepresented anything," Sanborn says.

The state revoked Lacefield's insurance license and fined him $7,000.

Shelby County deputies arrested Lacefield in November 1999 on a theft charge. A former office manager at Green Games on Overton Crossing charged Lacefield with selling her a credit card processing machine that didn't work for more than $1,000. According to the court affidavit, Lacefield also set the manager up on a credit account that didn't exist. But Lacefield's case was bound over to the Shelby County grand jury for 22 months. Prosecutors later dropped the case for lack of evidence.

"They felt under the state statutes that this did not arise to theft," says Shelby County Deputy District Attorney General James Challen.

Lacefield plans to appeal his case. He's doing his time at a federal prison in Oakdale, Louisiana. After completing his sentence, he will be under supervised release for three years, and he will not be allowed to work any job that has access to peoples' personal information. Under the rules of federal sentencing, Lacefield will not be eligible for parole.



31 X

EXHIBIT D
2 Pages